

**CLERK, U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

Signed August 26, 2021

**United States Bankruptcy Judge**

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| JONATHAN ALAN ADAMCIK, | § | Case No.: 18-50152-RLJ-7 |
| Debtor. | § | |
| | § | |
| UNITED STATES TRUSTEE, | § | |
| Plaintiff, | § | |
| v. | § | Adversary No. 20-05052 |
| JONATHAN ALAN ADAMCIK, | § | |
| Defendant. | § | |

## MEMORANDUM OPINION

(Findings of Fact and Conclusions of Law)

The United States Trustee (UST) filed its complaint objecting to Jonathan Adamcik, the defendant (and debtor), receiving a discharge in his converted-to chapter 7 case. The UST says that Adamcik's failure to disclose his purchase of a house in Lubbock, the lease of a home in Argyle, Texas, and a $52,000 severance payment from the City of Denton—all of which occurred after the confirmation of his chapter 13 plan—warrant denial of the chapter 7 discharge.

1

The UST makes this charge under sections 727(a)(4)(A) (for a knowing and fraudulent false oath) and 727(a)(2)(B) (for a fraudulent concealment of property of the estate).[1] Alternatively, the UST claims that Adamcik's case should be dismissed with prejudice for two years as a bad faith filing under section 707(a) of the Code.

## I. Findings of Fact

1. The debtor, Jonathan Alan Adamcik, filed this bankruptcy case under chapter 13 of the Bankruptcy Code on June 1, 2018. Under his bankruptcy schedules, Adamcik claimed a house in Argyle, Texas, as his homestead; he valued the house at $453,667, with $49,000 of equity.

2. Adamcik's chapter 13 plan was confirmed by the Court's order of August 27, 2018. An amended order was issued on October 4, 2018. The amended order provides that unscheduled or undisclosed property, as well as after-acquired property under section 1306(a)(1), "shall not revest in Debtor upon confirmation pursuant to Section 1327(b)." Case No. 18-50152, ECF No. 43 at 5. It also states that the "Debtor shall not dispose of or encumber any non-exempt property prior to discharge without consent of the Trustee or order of the Court after notice to the Trustee and all creditors." *Id*.

3. About two weeks after the plan was confirmed, Adamcik purchased a house in Lubbock, Texas. The purchase was owner-financed; although the title to the house and the loan documents are in Adamcik's name and signed by Adamcik, his mother testified that she made the down payment and also pays the regular monthly loan payments. She said that Adamcik's stepdaughter lives in the house and makes payments to her, which, in effect, reimburse her for the payments to the mortgagee. She and Adamcik both testified that the Lubbock house was put in Adamcik's name rather than in the name of his parents because his father had cancer.

---

[1] "Section" refers to 11 U.S.C.

4. In July 2019, Adamcik leased the Argyle home to Robert Schoolcraft. The lease payments were $3,000 per month. The lease expired in February 2020.

5. In early July 2020, Adamcik lost his job as Senior Energy Market Operator with the City of Denton.[2] According to the chapter 13 trustee, Adamcik had fallen behind on his chapter 13 plan payments in March of 2020.

6. On July 3, 2020, Adamcik converted his chapter 13 case to a case under chapter 7 of the Bankruptcy Code.

7. Within a few weeks after the conversion of his case to chapter 7, Adamcik received a severance payment of about $52,000 from the City of Denton.

8. On July 21, 2020, Adamcik filed two notices with the Court: (1) a notice under Rule 1019(5)(C)(iii), stating that he had no executory contracts or unexpired leases that had been entered into after the petition and before conversion; (2) a notice under Rule 1019(5)(C)(ii) that he had no unpaid debts incurred after confirmation but before conversion that were not listed in the Trustee's Final Report and Account.[3] Adamcik's Exs. 4, 5. The notices were signed by Adamcik's attorney and not by Adamcik.

9. The Chapter 13 Trustee's Final Report was filed on July 22, 2020. UST's Ex. 12. It does not reflect the debt incurred by Adamcik on the purchase of the Lubbock home. The Report reflects that the chapter 13 trustee disbursed just under $116,000, with $102,000 paid to secured creditors. At conversion, Adamcik's chapter 13 plan projected to pay unsecured creditors 7% of their claims if the plan went full term.

---

[2] Defendant's Proposed Findings of Fact and Conclusions of Law said Adamcik left his job in May 2020. ECF No. 16 at 2. At the June 28, 2021 trial, however, Adamcik testified that he was laid off in early July 2020.
[3] "Rule" refers to a rule of the Federal Rules of Bankruptcy Procedure.

10. Adamcik testified that he sold his Argyle home in October 2020, netting about $40,000, which he split with his ex-wife.

11. Adamcik did not file amended (or newly-required) schedules to reflect his purchase of the Lubbock home, his lease of the Argyle property, or his receipt of the severance payment. (He also bought a lot in Crosby County for $400, which he has also never listed.)

12. Adamcik's counsel for the chapter 13 part of his case withdrew, and present counsel substituted in as counsel on September 18, 2020.

13. The UST's complaint initiating this adversary action was filed on October 19, 2020.

14. Adamcik filed his last amended schedules A/B and C—of property (real and personal) and exemptions—on October 1, 2020 and, in doing so, declared they were true and correct.

15. Adamcik lives and is presently employed in Hawaii.

16. The parties stipulated to the following additional facts:

- that Adamcik did not seek court approval to acquire the Lubbock home during his chapter 13 bankruptcy

- that Adamcik did not amend his budget or schedules to reflect the acquisition of the Lubbock home

- that at the August 18, 2020 chapter 7 creditors meeting, in response to direct questioning about the Lubbock home, Adamcik testified that his name and signature were on the deed of trust

- that Adamcik testified the Lubbock home was a lease-to-own acquisition (also at the August 18 creditors meeting)

- that his 2019 tax return—filed in 2020—lists the Lubbock home as Adamcik's home address

- that the statements from Texas Tech Federal Credit Union and Prosperity Bank list the Lubbock home as Adamcik's home address

- that Adamcik did not amend the bankruptcy to list the Lubbock home as his home address

- that in response to the question on the Statement of Financial Affairs regarding property held for another, Adamcik answered "none" and has not amended the answer

- that on October 1, 2020, Adamcik amended his Schedules A/B and C, but he did not disclose the Lubbock home

- that on April 18, 2020, the Denton Record Chronicle reported that the City of Denton had a budget shortfall as a result of Covid-19 and that the upcoming week, the week of April 20, Denton would offer voluntary separation agreements to employees who were considering job changes or retirement and that layoffs could begin May 11, 2020

- that Adamcik did not disclose the severance payments in his schedule of income

- that on July 31, 2020, two weeks before the chapter 7 creditors' meeting, Adamcik received two payroll deposits from the City of Denton: one in the amount of $39,434.69 and the other in the amount of $12,854.04

- that during the August 18, 2020 creditors' meeting, Adamcik testified that he had no income because he had been laid-off by the City of Denton

- that while his chapter 13 bankruptcy was pending, Adamcik received $24,000 in $1,000 increments from Robert A. Schoolcraft (from the lease of the Argyle house)

- that Schoolcraft is not listed as a party to an executory contract or a party to a lease

- that the $1,000 payments were not listed as an ongoing income source in the Schedule of Income

## II. Conclusions of Law

### Jurisdiction and Applicable Code Provisions and Rules

1. The Court has jurisdiction of this contested matter under 28 U.S.C. § 1334(b); this dispute is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (J).

2. Section 348(f)(1) provides that, unless the conversion from chapter 13 to chapter 7 was done in bad faith under subsection (f)(2)—in which event the estate property consists of the

5

property held upon conversion—the property of the estate in the converted-to chapter 7 case "shall consist" of the debtor's property as of the petition date "that remains in the possession of or is under the control of the debtor on the date of conversion." 11 U.S.C. § 348(f)(1).

3. The Bankruptcy Rules provide that if a chapter 13 debtor converts his case to chapter 7 *after* confirmation of his chapter 13 plan, the debtor shall file a schedule of property not listed in the final report and account acquired after the filing of the petition but before conversion, "except if the case is converted . . . and § 348(f)(2) does not apply"—meaning the case was *not* converted in bad faith. Fed. R. Bankr. P. 1019(5)(C)(i). If the debtor converts the case in bad faith, "the property of the estate in the converted case shall consist of the property of the estate as of the date of conversion." 11 U.S.C. § 348(f)(2).

4. Section 1306 of the Code states that property of the bankruptcy estate includes property the debtor acquires after the case is filed "but before the case is closed, dismissed, or converted . . . whichever occurs first." Section 1327(b) states that, "[e]xcept as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor."

5. A debtor is required to comply with the Federal Rules of Bankruptcy Procedure, specifically Rule 1019(5)(C)(ii), (iii). Rule 1019(5)(C)(ii) requires that a chapter 13 debtor who converts to chapter 7 after confirmation of a chapter 13 plan file a list of unpaid debts incurred after confirmation of the chapter 13 plan if it does not appear on the chapter 13 trustee's final report and accounting. Additionally, Rule 1019(5)(C)(iii) requires that the debtor file a list of executory contracts entered into during the chapter 13 case. *See* Fed. R. Bankr. P. 1019(5)(C)(ii), (iii); Keith M. Lundin, LUNDIN ON CHAPTER 13 § 142.1 ¶ 5, LundinOnChapter13.com (last visited Aug. 19, 2021) ("If conversion occurs after confirmation,

the debtor must [file] a schedule of unpaid debts incurred after confirmation (if not listed in the trustee's final report), and a schedule of executory contracts entered into or assumed during the superseded Chapter 13 case.").

6. The Court's Local Rule 1019-1 addresses the obligations of a debtor, either an entity or individual, upon conversion of a pending case—*any* pending case—to chapter 7. The rule requires that, upon conversion, the debtor must file "a schedule of those assets remaining in the possession of the debtor as of the date of conversion, . . . a schedule of assets and unpaid post-petition obligations or expenses, if any, and if the debtor is an individual, a statement of current monthly income and means test calculation." L.B.R. 1019-1(a). The rule implements the basic requirements of national Rule 1019 which requires that the debtor, upon conversion, file a schedule of property acquired "after the filing of the petition but before conversion." But the local rule does not provide for the national Rule's exception to this requirement—the circumstance of a chapter 13 debtor that has converted in good faith to chapter 7 at some time *after confirmation* of a plan.

7. The Court's Local Rule requires that the debtor file a schedule of assets "remaining in the possession of the debtor" as of the conversion date, along with a list of property abandoned or that is lost because the stay terminated. It further provides, somewhat redundantly, that the debtor shall file a "schedule of assets and unpaid post-petition obligations or expenses, . . . and if the debtor is an individual, a statement of current monthly income and means test calculation." L.B.R. 1019-1(a). Of importance, however, is that Local Rule 1019-1 governs *any* debtor—whether an individual or entity and under any prior chapter proceeding (11, 13, or 12)—that converts to chapter 7. The national Rule specifically addresses a chapter 13 debtor that converts post-confirmation to chapter 7.

Denial of Discharge–§ 727

8. A creditor or the UST "objecting to the debtor's discharge bears the initial burden of production to present evidence that the debtor made false statements." *Cadle Co. v. Duncan (In re Duncan)*, 562 F.3d 688, 695–96 (5th Cir. 2009) (citing Fed. R. Bankr. P. 4005 advisory committee's note). "The objecting party must prove its grounds for objecting to a debtor's receipt of a discharge by a preponderance of the evidence." *Frank v. Ward (In re Ward)*, No. 15-3050, 2017 WL 377947, at *11 (Bankr. N.D. Tex. Jan. 26, 2017). "If the plaintiff establishes a prima facie case, then the burden shifts to the debtor to present evidence that he is innocent of the charged offense." *In re Duncan*, 562 F.3d at 696. Exceptions to discharge under § 727 are construed liberally in favor of the debtor and strictly against the objecting party in furtherance of the "fresh start" policy of the Bankruptcy Code.[4] *McClendon v. DeVoll (In re DeVoll)*, 266 B.R. 81, 97 (Bankr. N.D. Tex. 2001) (citing cases). This is because "denial of a debtor's discharge is considered a harsh and extreme remedy," and denial should "only [be] for very specific and serious infractions." *White Nile Software, Inc. v. Mandel (In re Mandel)*, No. 12-4127, 2017 WL 1207503, at *20 (Bankr. E.D. Tex. Mar. 31, 2017) (citing *Lowry v. Croft (In re Croft)*, 500 B.R. 823, 857 (Bankr. W.D. Tex. 2013)). "A denial of discharge is to be imposed only upon those debtors who have not been honest and forthcoming about their affairs and therefore have not fulfilled the duties of full disclosure required of a bankruptcy debtor." *Id.*

False Oaths–§ 727(a)(4)(A)

9. Under § 727(a)(4)(A), the Court may deny a debtor his discharge if a debtor knowingly and fraudulently, in or in connection with the case, made a false oath or account. Section 727(a)(4)(A) has five elements: (1) the debtor made a statement under oath; (2) the statement

---

[4] § refers to 11 U.S.C. unless otherwise stated.

was false; (3) the debtor knew the statement was false; (4) the debtor made the statement with fraudulent intent; and (5) the statement was material to the bankruptcy case. *Sholdra v. Chilmark Fin. LLP (In re Sholdra)*, 249 F.3d 380, 382 (5th Cir. 2001). "The purpose of § 727(a)(4)(A) is to enforce a debtor's duty of disclosure and to ensure that the Debtor provides reliable information to those who have an interest in the administration of the estate. Thus, complete financial disclosure is a condition precedent to the privilege of discharge." *In re Mandel*, 2017 WL 1207503, at *26 (quotations and citations omitted). "False oaths sufficient to justify the denial of discharge include (1) a false statement or omission in the debtor's schedules or (2) a false statement by the debtor at the examination during the course of the proceedings." *Beaubouef v. Beaubouef (In re Beaubouef)*, 966 F.2d 174, 178 (5th Cir. 1992) (quotations and citations omitted).

10. The UST alleges that Adamcik knowingly made false statements under oath on his schedules, statement of financial affairs, and in his creditors' meeting testimony. ECF No. 3 at 9.[5] The UST argues that there was fraudulent intent where there was a "pattern of systematic concealment" of the debtor's interest in assets that "show[] a lack of candor with the court." *Id*. "The nature, variety, and frequency of these mistakes demonstrates reckless disregard to the accuracy of the information required by the schedules and the defects are tantamount to an intent to deceive." *Id*. The statements were material, according to the UST, because disclosing interests in assets fosters the ability to trace assets and evaluate income.

11. Adamcik argues that he was not required to amend his schedules to include property acquired after he filed his chapter 13 petition, that there is no provision in the Bankruptcy Code

---

[5] "ECF No." refers to a docket entry in Adversary No. 20-05052 unless otherwise stated.

that requires him to obtain prior court approval to obtain credit, and that there is no evidence that he did not reveal these assets with the deliberate intent to deceive.

      12. The courts have held that chapter 13 debtors have a continuing duty to disclose, and to disclose assets acquired post-confirmation, even if there is a colorable theory that the acquired assets are not property of the estate. *Woodard v. Taco Bueno Restaurants, Inc.*, No. 05-cv-804, 2006 WL 3542693, at *10 (N.D. Tex. Dec. 8, 2006) ("[T]he debtor has a continuing obligation to be truthful and forthcoming about all of his assets—from commencement to discharge—so that the bankruptcy court, the trustee, and the allowed creditors can track any change in the debtor's ability to pay his debts. Thus, 'for chapter 13 to work, … the chapter 13 debtor has a continuing duty to disclose property and earnings acquired after the commencement of the case.'" (quoting *In re Wakefield*, 312 B.R. 333, 339 (Bank. N.D. Tex. 2004)); *see also In re Castillo*, 508 B.R. 1, 7–8 (Bankr. W.D. Tex. 2014) ("Further, the Fifth Circuit previously held that a Chapter 13 debtor has a continuing duty to disclose even a post-petition cause of action because debtors have an express, affirmative duty to disclose all assets even if there is uncertainty about if those assets are property of the estate.") (citing *In re Flugence*, 738 F.3d 126, 129 n.1 (5th Cir. 2013)); *In re Aycock*, No. 10-80516, 2014 WL 1047803, at *3 (Bankr. W.D. La. Mar. 18, 2014) (noting that the Fifth Circuit case *In re Flugence* "sets forth the binding precedent that the debtor in Chapter 13 has a continuing duty to disclose the post-confirmation acquired asset so that its status as property of or outside the estate may be determined by the Bankruptcy Court"); *Howard v. Fina Oil & Chemical Co. (In re Howard)*, No. 15-cv-48, 2016 WL 164320, at *4 (S.D. Miss. Jan. 13, 2016) ("Chapter 13 debtors have a duty to disclose post-confirmation assets notwithstanding uncertainty as to whether the asset may be ultimately adjudged to be property of the bankruptcy estate or vested in the debtor."); *United States v. GSD&M Idea City LLC*, No. 11-

10

cv-1154, 2014 WL 11320447, at *4 (N.D. Tex. June 10, 2014) ("Debtors have an affirmative, ongoing duty to disclose all assets, including contingent and unliquidated claims and potential causes of action."). This is even true "regardless of whether the assets are 'treated as property of the estate or vested in the debtor.'" *United States ex rel. Bias v. Tangipahoa Parish School Board*, 766 Fed. App'x 38, 42 (5th Cir. 2019) (quoting *Allen v. C & H Distribs., L.L.C.*, 813 F.3d 566, 572 (5th Cir. 2015)).

13. As for the post-confirmation disclosures, Adamcik, through his attorney, insists that he was not required to disclose any property acquired during the chapter 13 case because the chapter 7 estate consists of the debtor's assets at the time of the chapter 13 filing.

14. Because "[i]n most circumstances only the debtor can testify directly concerning his or her intent . . . the existence of a fraudulent intent is most often betrayed by an examination of a course of conduct." *In re Mandel*, 2017 WL 1207503, at *26 (citations omitted). "While erroneous information in a debtor's SOFA and/or schedules can be indicative of fraudulent intent, it is not absolute." *Chu v. Texas*, 572 B.R. 177, 181 (N.D. Tex. 2015). Nevertheless, "a series of mistakes or omissions, even if innocent in themselves, can constitute evidence of a pattern of reckless and cavalier disregard for the truth." *Id.* (quotations and citations omitted).

15. Last, the UST must establish that the statements were material. "In determining whether or not an omission is material, the issue is not merely the value of the omitted assets or whether the omission was detrimental to creditors. The subject matter of a false oath is material, and thus sufficient to bar discharge, if it bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property." *In re Beaubouef*, 966 F.2d at 178 (quotation marks and citations omitted).

Concealing Property–§ 727(a)(2)(B)

16. The court may not grant the debtor a discharge if the debtor "with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property . . . [has] concealed . . . property of the estate, after the date of the filing of the petition." § 727(a)(2)(B). Section 727(a)(2)(B) is intended "to prevent the discharge of a debtor who attempts to avoid payment to creditors by concealing or otherwise disposing of assets" subsequent to filing his petition for bankruptcy. *Welch v. LaPace (In re LaPace)*, 614 B.R. 911, 916 (Bankr. M.D. Fla. 2020) (quoting *In re Cutaia*, 410 B.R. 733, 738 (Bankr. S.D. Fla. 2008)). To succeed on this claim, the UST must demonstrate by a preponderance of the evidence that: "(1) the debtor, (2) transferred or concealed, (3) property of the estate, (4) with the intent to hinder, delay or defraud a creditor, (5) after the filing of the petition." *Adams v. Bostick (In re Bostick)*, 400 B.R. 348, 356 (Bankr. D. Conn. 2009). "Concealment means withholding knowledge of an asset by failing or refusing to divulge owed information." *Los Alamos Nat'l Bank v. Lamey (In re Lamey)*, 574 B.R. 240, 247 (Bankr. D.N.M. 2017).

17. The UST argues that during the chapter 13 case, the real estate and income Adamcik acquired after confirmation was property of the estate that was concealed with actual intent to "hinder, delay, or defraud a creditor or officer of the estate." ECF No. 3 at 10 (does not say who was duped or provide anything to support actual intent beyond what was already alleged).

18. Adamcik argues that the UST has not alleged "any instance where the Debtor committed acts where 'property of the estate' was concealed." ECF No. 21 at 8.

Conversion in Bad Faith

19. The UST alleges that Adamcik converted to chapter 7 in bad faith and thus, alternatively, his case should be dismissed with prejudice for two years.

20. In the Fifth Circuit, courts look to the totality of the circumstances in deciding if a chapter 13 case is converted to chapter 7 in bad faith. A court may consider whether the conversion was motivated by an inability to make required payments to the chapter 13 trustee or "whether the debtors have been forthcoming regarding the existence of any post-petition change in circumstances that might affect their ability to make payments to their creditors and whether the conversion would create a windfall for the debtors (other than a decrease in liabilities) to which they would not have been entitled but for the existence of their pending Chapter 13 case." *Moser v. Mullican (In re Mullican)*, 417 B.R. 389, 402 (Bankr. E.D. Tex. 2008).

21. Adamcik argues that he did not convert his case in bad faith; he says he converted because he had lost his job and could not make his chapter 13 plan payments.

22. Several cases in the Fifth Circuit have considered the issue of a bad faith conversion. In *Moser v. Mullican (In re Mullican)*, 417 B.R. 389 (Bankr. E.D. Tex. 2008), the court found that the debtors had converted in bad faith where one of the debtors had lost his job but also inherited assets that could have been used to pay off their plan in full. The court determined that based on the totality of the circumstances, the conversion of the case was meant to keep the inherited assets out of the hands of their creditors and would create a windfall to the debtors. *See also Lentz v. Myers (In re Myers)*, 486 B.R. 365 (Bankr. S.D. Miss. 2013) (finding that debtors converted their chapter 13 case to chapter 7 in bad faith where the conversion was not motivated by an inability to make chapter 13 plan payments, the debtors had not been forthcoming about the changes in their post-petition circumstances based on post-petition acquired assets and income, and conversion created a windfall all which showed a design to mislead or deceive by some interested or sinister motive); *but see In re Castillo*, 508 B.R. 1 (Bankr. W.D. Tex. 2014) (finding no bad faith in conversion to chapter 7 where conversion was based on failure to pay

13

chapter 13 plan payments because of job loss and health issues, despite violating continued obligation to disclose post-petition claims by not disclosing newly acquired assets from inheritance).

Dismissal of Chapter 7 for Bad Faith under § 707(a)

23. Under § 707(a), a "court may dismiss a case under this chapter only after notice and a hearing and only for cause." "The statute lists three grounds 'for cause' that all courts have understood as illustrative, not exclusive: 1) 'unreasonable delay by the debtor that is prejudicial to creditors' 2) 'nonpayment of any fees or charges' required to file a case and 3) 'failure of the debtor in a voluntary case to file' schedules and creditor lists." *Krueger v. Torres (In re Krueger)*, 812 F.3d 365, 370 (5th Cir. 2016) (quoting § 707(a)). Additionally, the Fifth Circuit has explicitly held that cause for dismissal under § 707 includes "any reason cognizable to the equity power and conscience of the court as constituting an abuse of the bankruptcy process." *Little Creek Dev. Co. v. Commonwealth Mortg. Co. (In re Little Creek Dev. Co.)*, 779 F.2d 1068, 1072 (5th Cir. 1986). The court has broad discretion in determining what constitutes "cause." *In re Krueger*, 812 F.3d at 371.

24. The UST asks the Court to dismiss the case for abuse based on bad faith under § 707(a) and bar re-filing for two years. Adamcik argues that he did not convert his chapter 13 case to chapter 7 in bad faith because he lost his job.

Disposition

25. The transactions complained of here—Adamcik's purchase of the Lubbock home, the lease of the Argyle house, and Adamcik's receipt of the severance payments—all took place after his plan was confirmed.

26. Adamcik's failure to affirmatively disclose these deals, taken together, add-up to fraud, the UST contends. But there is no evidence that when Adamcik filed his case that he made a materially false oath by signing a false schedule or statement of financial affairs, or that he misrepresented any pertinent facts regarding his properties or debts, while under oath or otherwise. His lawyer for the chapter 13 portion of his case testified that he believed it would have been prudent to have affirmatively disclosed the house, severance, and rentals.

27. The Court's authorization for obtaining a loan is needed if sought by a trustee. The Code regulates the use, sale, or lease of property that is outside the ordinary course. But, again, it refers to the *trustee's* use, sale, or lease of property. 11 U.S.C. § 363. The Bankruptcy Code does not explicitly so regulate the conduct of a chapter 13 debtor who is living under a confirmed chapter 13 plan.

28. Counsel for Adamcik ably argues that regardless of the surface suspicions and the ambiguity of what was required of Adamcik upon his conversion to chapter 7, Adamcik's conduct (or alleged failings) cannot constitute fraud.

29. Absent bad faith, the chapter 7 estate consists of the property that Adamcik had when he filed chapter 13 and that he still holds. It does not include property acquired after filing the chapter 13 case.

30. A chapter 13 debtor that converts to chapter 7 after confirmation of the chapter 13 plan is treated as if he had filed a chapter 7 case from the date of the chapter 13 petition.

31. Neither the Code nor the Rules require that a chapter 13 debtor disclose additional property acquired after filing a chapter 13 case, unless such property falls under section 541(a)(5) of the Code—property acquired within 180 days after filing the petition by inheritance,

a property settlement agreement, or as beneficiary of a life insurance policy. *See* Rule 1007-I(h). The continuing obligation to disclose newly obtained property and income arises from case law.

32. The Code grants a debtor that has made a sincere but failed effort to pay his creditors under a chapter 13 plan an opportunity to convert to chapter 7, complete the case, and obtain a discharge. The debtor's efforts are rewarded. But this all changes if the debtor converts his case in bad faith. Then, upon conversion, estate property *includes* property acquired up to the time of conversion. And the debtor *must* account for all his property as of the date of conversion.

33. At the time Adamcik converted to chapter 7, on July 3, 2020, he had lost his job. Within a few days after conversion, he knew he was going to receive a severance payment. *See* UST's Ex. 34.

34. Had Adamcik properly disclosed his current monthly income and completed the means test calculation, creditors and the UST would have been better able to assess his bona fides at conversion.

35. Debtors must be transparent; they must provide all information required of them. The promise of a discharge, the greatest benefit accorded an individual in bankruptcy, is conditioned upon the debtor's candor and honesty.

36. Adamcik knew he purchased the Lubbock home; he knew he was financed by the owner. He knew his parents did not purchase the home. He knew the Lubbock home was used as his home address on his tax return. He knew it was not a "lease-to-own" deal.

37. Adamcik did not file a statement of current monthly income and a means test calculation, as required by Local Rule 1019-1. He also failed to file a correct schedule of unpaid debts not listed in the Chapter 13 Trustee's Final Report and Account incurred after confirmation. His loan on the purchase of the Lubbock home is a major obligation. The

"Notice" stating there were no unpaid debts was false. The fact that his mother makes the payments did not relieve him of the obligation to disclose the loan.

38. Adamcik's obfuscations, misrepresentations, and failures frustrated any effort by the UST to make a quick and easy assessment of whether Adamcik's conversion to chapter 7 was done in good faith.

39. The Code states that a chapter 13 debtor may convert as a matter of right to chapter 7. And it rewards debtors that made a genuine effort to repay at least part of their debts under a chapter 13 plan—their post-petition property is not part of the chapter 7 estate. But the debtor must be honest and upfront upon conversion.

40. There are multiple questions that arise in assessing a debtor's continuing obligation to disclose assets during a chapter 13 case: what assets must be disclosed? When and how are such disclosures to be made? How significant must the asset be—real property, vehicles, causes of action? Here, Adamcik did not amend his schedules to include a lot in Crosby County, Texas, for which he paid $400.00. How is the debtor prompted to make such disclosures? And then, as happened here, how is this obligation affected when the debtor converts post-confirmation to chapter 7 after a job loss, which a debtor has a right to do?

41. From the evidence before the Court, there is no clear indication that the issue of Adamcik's "continuing" obligation was ever broached between him and his lawyer during the chapter 13 part of his case. A debtor must have clear guidance on this point.

42. And after his conversion to chapter 7, it is clear that he was never instructed to disclose the added post-confirmation properties. He did file amendments to his schedules, but none of the amendments include the post-confirmation assets. He was advised by his then-

counsel that such assets are not property of the bankruptcy estate, which is so provided under the Bankruptcy Code.

43. The complexity of Adamcik's circumstance—filing a 13 case and obtaining confirmation; buying the house, collecting rentals, and receiving the severance; and converting to 7—colors the Court's analysis of Adamcik's alleged fraud. The effect of his post-confirmation conduct on the bankruptcy estate is unclear.

44. Because of this, and given that it is Adamcik's discharge that is on the line, the Court cannot find that he had the requisite intent to defraud his creditors or the UST through a false oath or a concealment of assets.

45. The more troubling question is whether Adamcik converted to chapter 7 in bad faith. Within two weeks after the conversion, he knew he was going to receive the severance. And it is no stretch to infer that he knew about the severance at the time he converted. At his section 341 meeting held after the conversion, Adamcik was evasive and lacked candor. He testified that he had no income, despite having received the severance. He refused to acknowledge that he had purchased the Lubbock house until he had no choice. Adamcik failed to file a correct schedule of the debts incurred and still owing—the loan on the Lubbock house—as required by the Rules.

46. The Court concludes that Adamcik's conversion to chapter 7 was done in bad faith. The UST asks that this case be dismissed with prejudice to refiling for twenty-four months. The Code, however, provides the remedy. Section 348(f)(2) directs that if a chapter 13 debtor is found to have converted to chapter 7 in bad faith, the chapter 7 estate includes all of the debtor's property as of the date of conversion.

47. Adamcik will be ordered to file an amended schedule of *all* assets that he acquired and debts incurred up to the date of his conversion to chapter 7. The amended schedule must be filed within twenty days of entry of the Court's order on these findings and conclusions.

48. Adamcik's chapter 7 bankruptcy estate shall include all such assets.

49. The issues here raise mixed questions of fact and law. Accordingly, where appropriate, findings of fact may be considered conclusions of law and conclusions of law may be considered findings of fact.

### End of Memorandum Opinion ###